## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In Re: ADC Telecommunications, Inc. ERISA Litigation, | MBD No. *0 5- 10 307-RGS* |
| Relates To All Actions | Master File No. 03-2989 ADM/FLN United States District Court District of Minnesota |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
### TO QUASH SUBPOENA DUCES TECUM

Plaintiff James A. Carnahan ("Movant"), on behalf of himself and a class of all others similarly situated, respectfully submits the following memorandum in support of his Motion, pursuant to Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure, for an order quashing the subpoena *duces tecum* served upon Steven Feinstein ("Feinstein") by Andrew Holly, Esq. of the firm of Dorsey & Whitney, LLP, on July 26, 2005 (the "Subpoena") (attached hereto as Exhibit "A").

### PRELIMINARY STATEMENT

On January 25, 2005, Movant filed an Amended Consolidated Class Action Complaint ("Complaint") against ADC Telecommunications, Inc. ("ADC" or the "Company"), its Board of Directors and other officers of the Company in the United States District Court for the District of Minnesota. The Complaint asserts claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 and alleges, *inter alia*, that Defendants breached their fiduciary duties with respect to the management and administration of the ADC Telecommunications, Inc. Retirement Savings Plan (the "Plan"). Thereafter, on March 15, 2005, the Honorable Franklin L. Noel signed an Amended Pretrial Order establishing, among other things, a schedule for

discovery. Judge Noel set October 1, 2005 as the deadline for all discovery to be completed, with the exception of expert depositions, which are to be completed by November 1, 2005. This matter is expected to be ready for trial by February 1, 2006.

The parties to this matter have been engaged in discovery over the last several months. On July 1, 2005, in accordance with Judge Noel's Order, Plaintiff disclosed the identity of his experts. Subsequently, Defendants, through their attorney, served a subpoena *duces tecum* to each of Plaintiff's experts, one of whom is Feinstein. Notably, Defendants also propounded a document request seeking expert witness materials.

The Subpoena requires that Feinstein produce certain documents, broadly defined, for inspection on August 9, 2005 at 9:00 a.m. at a place to be determined.[1] Included among the documents requested are materials that clearly are protected from production by the attorney work-product doctrine. In essence, the Subpoena is overbroad and makes no attempt to avoid requesting privileged documents. The remaining requests of the Subpoena ask for documents which are either in the public domain and can just as easily be obtained by Defendants as Feinstein, or will cause Feinstein undue hardship to obtain. Further militating in favor of quashing the subpoena is the fact that Plaintiffs are producing documents relating to the expert witnesses, in accordance with the Federal Rules of Civil Procedure, in response to discovery requests propounded by Defendants.

For these reasons, as discussed more fully below, Movants respectfully request that the Subpoena be quashed pursuant to Federal Rule of Civil Procedure 45(c)(3)(A).

---

[1] By letter dated August 5, 2005, Plaintiff's counsel informed Defendants' counsel that he would produce documents exchanged between Plaintiff and his experts by August 15, 2005, thus extending the response date of the Subpoena until August 15, 2005.

## **ARGUMENT**

As a threshold matter, because the instant Subpoena is addressed to Plaintiff's expert, Plaintiff is permitted to file this motion with the court on behalf of its expert seeking appropriate relief. *See, e.g., Smith v. Transducer Technology, et al.*, 2000 U.S. Dist. LEXIS 17217, *2 (D. V.I. Nov. 16, 2000) (finding that "[m]any courts have routinely considered, without discussion of standing, a party's motion to quash subpoenas *duces tecum* addressed to that party's expert witnesses") (citations omitted).

Plaintiff also asserts a privilege to certain documents being requested by Defendants and therefore retains the right to object to their production. *See, e.g., United States of America v. Thurston Bell*, 2002 U.S. Dist. LEXIS 14470, * 3 (M.D. Pa. June 13, 2002) (quoting *Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 635 (D. Kan. 1999)) (standing conferred upon party, even if not to whom subpoena directed, if seeking to challenge right or privilege with respect to subject matter requested in the subpoena).

## I.    The Subpoena is Invalid on its Face

### A.    The Subpoena Suffers from Procedural Defects

The Subpoena fails to specify a place for responding thereto as required by Fed. R. Civ. P. 45(a)(1)(C) which states, in pertinent part, that "[e]very subpoena shall . . . command each person to whom it is directed . . . to produce and permit inspection and copying of designated . . . documents . . . at a time and place therein specified." The Subpoena only states that documents are to be produced "at a place to be determined." *See* Exhibit "A."

Further, Fed. R. Civ. P. 45(c)(3)(A)(ii) allows a court to quash or modify a subpoena if it "requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed, or regularly transacts business . . . ." The Court in *Anderson v. Government of the Virgin Islands*, 180 F.R.D. 284, 1998 U.S. Dist. LEXIS 8716 (D. V.I. June 9, 1998) found that "[r]eading [federal] Rules 34 and 45 in tandem, a non-party can be compelled to produce documents within certain geographic limitations, *usually no more than 100 miles from the non-party's location.*") (emphasis added). *Id.* at ** 13.

Here, failure to designate a location within 100 miles of where Feinstein is to produce the requested documents invalidates the Subpoena. *See Khachikian v. BASF Corp.*, 1994 U.S. Dist. LEXIS 2881, *4 (N.D.N.Y. Mar. 4, 1994) (declaring subpoena a nullity as it failed to "comply with the requirements of Rule 45"); *Anderson, supra,* 180 F.R.D. at **15 (quashing subpoena after finding that "plaintiff's counsel cannot direct the recipient of a subpoena to produce documents to a place outside the geographic limitations of Rule 45").

## B.    The Subpoena Represents an Impermissible Attempt to Circumvent the Federal Rules of Civil Procedure

Additionally, the ordinary course to follow to obtain documents from a party's expert is by propounding a request to the party pursuant to Fed. R. Civ. P. 34. Although a party's expert is not a party to the action, the expert's documents may be considered to be within the party's control and thus all requests for documents must be made pursuant to Rule 34 which "governs the discovery of documents in the possession or control of the parties themselves." *Alper v. United States of America*, 190 F.R.D. 281 (D. Mass. 2000) (quashing that part of the subpoena which required Defendant's expert to bring

4

documents to trial as it constituted a discovery request contemplated by Fed. R. Civ. P. 34 rather than Fed. R. Civ. P. 45). *See also Marsh v. Jackson*, 141 F.R.D. 431, 432-433 (W.D. Va. 1992) (commenting that Fed. R. Civ. P. 45 does not allow for a subpoena *duces tecum* to be directed to a retained non-party expert in order to obtain documents which in the ordinary course should be obtained pursuant to rule 26 (b)(4) and, concurrently, Rule 30); *Perry v. United States*, 1997 U.S. Dist. LEXIS 23875, * 4 (N.D. Tex. Feb. 4, 1997) (finding that "[a] party may not circumvent the limitations of Rule 26 and gain access to opposing expert evidence via a bare subpoena duces tecum").

It is quite obvious that Defendants are seeking to improperly circumvent the Federal Rules of Civil Procedure that deal with obtaining discovery from experts. For the above reasons, Defendants' Subpoena should be held invalid.

## II.    The Subpoena Requires Potential Disclosure of Communications and Attorney Work-Product

In addition to the procedural and substantive deficiencies outlined above, the subpoena duces tecum should be quashed for seeking materials protected from production. Rule 45(c)(3) of the Federal Rules of Civil Procedure protects recipients of subpoenas by empowering the court to quash a subpoena that (a) subjects a person to an undue burden or (b) requires disclosure of privileged or other protected matter. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).

The Subpoena seeks a host of documents potentially relating to communications between Feinstein and Plaintiff's counsel concerning Plaintiff. Many of these documents are privileged on their face.

Request No. 1 asks for "[a]ll documents, data, or other information considered or used by you in forming your opinions in this matter;" request No. 3 asks for "[a]ll

documents exchanged between you and plaintiff and/or his counsel in connection with this matter;" and request No. 4 asks for "[a]ll documents exchanged between you and any other person in connection with this matter." The definitions section of the Subpoena describes "document" as "written, printed, recorded, digital or graphic material . . . regardless of whether designated 'confidential', [or] 'privileged'" and includes e-mails and all other types of communications. *See* Exhibit "A."

These all-encompassing requests necessarily include confidential legal analysis, confidential e-mails among counsel or between counsel and Feinstein. Additionally, some or all of the documents contemplated by the document requests were created by attorneys or their agents in anticipation of litigation and contain mental impressions and analysis of legal issues, and thus come squarely within the definition of attorney work-product. Unquestionably, such work-product is protected from discovery to a party requesting such documents through a non-party expert. *See Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 593-94 (3d Cir. 1984) (finding that "even if examination into the lawyers' role [in framing an expert's opinion] is permissible . . . it does not warrant overriding the strong policy against disclosure of documents consisting of core attorney's work product"); *Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 9 (D. Mass. 1999) (finding that "the required disclosure under 26(a)(2)(B) & (b)(4)(A) does not include core attorney work product considered by the expert"); *All West Pet Supply Co. v. Hill's Pet Prod.*, 152 F.R.D. 634, 638 (D. Kan. 1993) (holding that protection afforded by Rule 26(b)(3) for attorney work product was not waived by sharing the documents in question with expert witnesses).

Defendants' overly broad requests for documents, which include attorney work-product, should be quashed. The requests should also be quashed to the extent the requests include confidential communications between Plaintiff's counsel and Plaintiff.

**III.    The Subpoena is Unduly Burdensome**

The Subpoena also subjects Feinstein to an undue burden under Rule 45(c)(3)(A)(iv). "Among the factors that the court may consider in determining whether there is an undue burden are 'relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Williams v. City of Dallas*, 178 F.R.D. 103, 109-110 (N.D. Tex. 1998) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)). Further, "the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citing Fed. R. Civ. P. 45 (c)(2)(B)); *see also Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003) (affirming order quashing subpoena because "[t]he burden on the nonparty . . . appears to be significant"). "Undue burden can be found when a subpoena is facially overbroad." *Williams*, 178 F.R.D. at 109.

Here, request No. 2 asks for "[a]ll exhibits to be used as a summary of or support for your opinions in this matter." This request is so broad and vague on its face as to be incapable of being complied with. *See Williams, supra* 178 F.R.D. at 109. If the request purports to seek exhibits to be used at trial, it is a premature request at best in as much as Feinstein has not began to put together an Exhibit list for trial.

7

Request No. 5 asks for "copies of all publications authored by you in the preceding 10 years." This request is overly burdensome. Feinstein is an accomplished individual in his field and has an extensive body of work dating back over the last 10 years. A copy of Feinstein's *curriculum vitae* is attached hereto as Exhibit "B." Each of Feinstein's publications are found on his *curriculum vitae* and Defendants can easily identify relevant publications and obtain copies in the public domain.

Request No. 6 asks for "copies of all transcripts of trial and deposition testimony within the preceding 4 years" and Request No. 7 asks for "copies of trial and deposition testimony identified in your Rule 26 Report in this matter." Both these requests ask for documents that, even if they exist, are not readily available to Feinstein. To require Feinstein to obtain these documents is clearly burdensome and can be accomplished by Defendants themselves. *See Nicholas v. Poughkeepsie Savs. Bank/FSB*, 1991 WL 113279, at * 2 (S.D.N.Y. June 14, 1991) (acknowledging that documents from subpoenaed non-party already in possession of requesting party or publicly available would have "minimal value" to requesting party and, therefore, limiting subpoena to documents "not otherwise available" from party to litigation or from public sources).

The Subpoena, with its vague and overbroad requests, would require Feinstein to undertake a costly production of documents, the vast majority of which will be either irrelevant to the underlying litigation or that Defendants' counsel could easily obtain through other channels. Under these circumstances, the Subpoena imposes an undue burden on Feinstein and, therefore, should be quashed.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court enter an

order quashing the Subpoena served upon Steven Feinstein on July 26, 2005.


Dated: August 15, 2005                Respectfully submitted,

                                      Gilman and Pastor, LLP

                                      By: _David Pastor_____
                                          David Pastor (BBO #391000)
                                          60 State Street, 37th Floor
                                          Boston, MA 02109
                                          Telephone: (617) 742-9700
                                          Fax: (617) 742-9701

                                      **SCHIFFRIN & BARROWAY, LLP**
                                      Joseph H. Meltzer
                                      Edward W. Ciolko
                                      Edward W. Chang
                                      280 King of Prussia Road
                                      Radnor, PA 19087
                                      Telephone: (610) 667-7706
                                      Fax: (610) 667-7056

                                      **EMERSON POYNTER LLP**
                                      Scott E. Poynter
                                      2228 Cottondale Ln., Suite 100
                                      Little Rock, AR 72202
                                      Telephone: (501) 907-2555
                                      Facsimile: (501) 907-2556

                                      **Co-Lead Counsel for Plaintiffs**


## CERTIFICATE OF SERVICE

I Hereby Certify That A True Copy of
the Above Document Was Served Upon
The Attorney Of Record For Each Other
    Party By Mail (By Hand) On  8/15/05
    _David Pastor_

9

SAO88  (Rev. 1/94) Subpoena in a Civil Case

**RECEIVED**
(H)
JUL 2 8 2005

**Issued by the**

# UNITED STATES DISTRICT COURT

DISTRICT OF ___Massachusetts___

HEAD, SEIFERT
& VANDER WEIDE

In re: ADC Telecommunications, Inc:ERISA Litigation

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 03-2989 (ADM/FLN) District of MN

TO:  Steven P. Feinstein, PhD, CFA
The Michael -Shaked Group
2 Park Plaza, Suite 500
Boston, MA 02116

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Exhibit A

| PLACE        AT A PLACE TO BE DETERMINED | DATE AND TIME 8/9/2005 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)     Attorney for Defendants | DATE 7/26/2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Andrew Holly, Dorsey & Whitney LLP, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402-1498
PH:  (612) 340-8830 (Attorney for Defendant)

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held; or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the mmmdemanding party to contest the claim.

## **EXHIBIT A**

### **Definitions and Instructions**

For purposes of these Requests, the following words shall have the meanings ascribed to

them below:

1.      As used herein, the term "document" or "documents" includes, the original or

drafts of any kind of written, printed, recorded, digital or graphic material or sound reproduction,

however produced or reproduced, whether sent or received or neither, and all copies thereof,

which are different in any way from the original (whether by notation, indication of copies sent

or received, or otherwise) regardless of whether designated "confidential," "privileged," or

otherwise, and including, but not limited to, any correspondence, paper, book, account, drawing,

agreement, calendar, diary, notes, publication, contract, memorandum, telegram, report, record,

audio tape, video tape, CD, DVD, transcript, study, note, intra-office communication, inter-office

communication, electronic mail ("e-mail") communication, computer program, computer file,

check, check stub, or note of any conference.

2.      "You" or "your" means Stephen P. Feinstein, PhD, CPA, all representatives or

other persons acting, or purporting to act, on your behalf, and all companies, corporations, or

entities that you control or to which you have access including, but not limited to The Michel-

Shaked Group.

3.      "Plaintiff" means James Carnahan (SSN 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).

## DOCUMENT REQUESTS

**REQUEST NO. 1:**   All documents, data, or other information considered or used by you in forming your opinions in this matter.

**REQUEST NO. 2:**   All exhibits to be used as a summary of or support for your opinions in this matter.

**REQUEST NO. 3:**   All documents exchanged between you and plaintiff and/or his counsel.

**REQUEST NO. 4:**   All documents exchanged between you and any other person in connection with this matter.

**REQUEST NO. 5:**   Copies of all publications authored by you in the preceding 10 years.

**REQUEST NO. 6:**   Copies of all transcripts of trial and deposition testimony within the preceding 4 years.

**REQUEST NO. 7:**   Copies of all transcripts of trial and deposition testimony identified in your Rule 26 Report in this matter.

# STEVEN P. FEINSTEIN, PH.D., CFA

Babson College                                                      The Michel-Shaked Group
Finance Division                                                   2 Park Plaza
Babson Park, MA 02457                                              Suite 500
781-239-5275                                                      Boston, MA 02116
Feinstein@Babson.Edu                                              617-426-4455

## EDUCATION

1989    YALE UNIVERSITY
        Ph.D. in Economics (Concentration in Finance)

1986    YALE UNIVERSITY
        M.Phil. in Economics

1983    YALE UNIVERSITY
        M.A. in Economics

1981    POMONA COLLEGE
        B.A. in Economics (Phi Beta Kappa, *cum laude*)

## TEACHING EXPERIENCE

1996 - present    BABSON COLLEGE, Babson Park, MA
                  Full-time Faculty, Finance Division
                  Director of the Stephen D. Cutler Investment Management Center
                  (2002-present)
                  Faculty Advisor to the Babson College Fund (2002-present)
                  Associate Professor (2000-present)
                  Assistant Professor (1996-2000)

1992 - 2002       BOSTON UNIVERSITY CHARTERED FINANCIAL ANALYSTS (CFA) REVIEW
                  PROGRAM;
                  Instructor
                  A 3-level program preparing financial analysts, portfolio managers, brokers and
                  other investment professionals for an examination leading to worldwide
                  certification. The program is one of the world's most prestigious of its kind. Its
                  core curriculum consists of the following modules:
                  ▪ Equity Securities Analysis
                  ▪ Fixed Income Securities Analysis
                  ▪ Portfolio Management
                  ▪ Derivatives
                  ▪ Financial Accounting
                  ▪ Economic Analysis
                  ▪ Quantitative Analysis
                  ▪ Ethical and Professional Standards

1990 - 1995       BOSTON UNIVERSITY SCHOOL OF MANAGEMENT, Boston, MA
                  Full-time Faculty, Department of Finance

1993 - 1994       WASHINGTON UNIVERSITY, OLIN SCHOOL OF BUSINESS, St. Louis, MO
                  Visiting Assistant Professor, Department of Finance

**BUSINESS EXPERIENCE**

| | |
|---|---|
| 1996 - present | THE MICHEL-SHAKED GROUP, Boston, MA |
| | Senior Expert (2001 - present) |
| | Affiliated Expert (1996 - 2001) |
| 1987 - 1990 | FEDERAL RESERVE BANK OF ATLANTA |
| | Economist |

**PROFESSIONAL DESIGNATIONS**

1998   Awarded the Chartered Financial Analyst designation by the Association of Investment
Management and Research

**RESEARCH AWARDS**

1999   Greater Boston Real Estate Board/Real Estate Finance Association – Research Grant and
Featured Speaker at Real Estate Finance Association Meetings

**PAPERS AND PUBLICATIONS**

"A Better Understanding of why NPV Undervalues Managerial Flexibility," (with Diane Lander)
in *The Engineering Economist*, 2002, Volume 47, Number 4.

"Planning Capital Expenditure," in *The Portable MBA in Financing and Accounting*, J. L.
Livingstone and T. Grossman, editors, New York: Wiley, 3rd edition 2001.

"Financial Management of Risks," in *The Portable MBA in Financing and Accounting*, J. L.
Livingstone and T. Grossman, editors, New York: Wiley, 2nd edition 1997, and 3rd edition 2001.

"Teaching the Strong-Form Efficient Market Hypothesis: A Classroom Experiment," *Journal of
Financial Education*, fall 2000.

*A Future for Real Estate Futures: Potential Applications of Derivatives in Real Estate Investment
and Finance.* (with Linda Stoller). Monograph. Boston: Real Estate Finance Association /
Greater Boston Real Estate Board, May 2000.

"The Risk Budget: Using Your Human Resources," (with John Marthinsen and John Edmunds)
*Risk Management*, April 2000

"Scenario Learning: A Powerful Tool for the 21st Century Planner," (with Jeffrey Ellis and
Dennis Stearns) *The Journal of Financial Planning*, April 2000.

"Protecting Future Product Liability Claimants in the Case of Bankruptcy," (with Allen Michel
and Israel Shaked) *American Bankruptcy Institute Journal*, January 2000

"Measuring Risk with the Bodie Put When Stocks Exhibit Mean Reversion," *The Journal of Risk*,
Vol. 1, No. 3, 1999.

"Just-in-Time Mathematics: Integrating the Teaching of Finance Theory and Mathematics,"
(with Gordon Prichett) *Primus*, Vol. IX, No. 2, June 1999.

*Atlanta Park Medical Center v. Hamlin Asset Management.* (with Natalie Taylor). Babson Case
Collection, Harvard Business School Press, 1998.

"Dealing with Delta," *Derivatives Week*, VII, No. 44, November 2, 1998.

"Expected Return in Option Pricing: A Non-Mathematical Explanation," *Derivatives Week*, VII, No. 35, August 31, 1998.

"When Hedges Fail: The Put Paradox and its Solution," *Derivatives Quarterly*, Vol. 4, No. 2, Winter 1997.

*Finance and Accounting for Project Management*.  New York: American Management Association, 1996.

"International Investing," in *Irwin's Directory of Emerging Market Brokerages*.  New York: Irwin, 1996.

"The Hull and White Implied Volatility." Boston University Working Paper #92-51, 1992.

"Immunizing Against Interest Rate Risk Using the Macaulay Duration Statistic: An Assessment," (with Don Smith) in *Financial Systems and Risk Management*, the proceedings of the US-Japan Forum on Financial Strategy in the 1990s, sponsored by Osaka Foundation of International Exchange and Boston University, August 1991.

"Covered Call Options: A Proposal to Ease LDC Debt," (with Peter Abken) *Federal Reserve Bank of Atlanta Economic Review*, March/April 1990.  Reprinted in *Financial Derivatives: New Instruments and Their Uses*. Atlanta: Federal Reserve Bank.

"Forecasting Stock-Market Volatility Using Options on Index Futures," *Federal Reserve Bank of Atlanta Economic Review*, May/June 1989.  Reprinted in *Financial Derivatives: New Instruments and Their Uses*. Atlanta: Federal Reserve Bank.

"The Black-Scholes Formula is Nearly Linear in Sigma for At-the-Money Options; Therefore Implied Volatilities from At-the-Money Options are Virtually Unbiased." Federal Reserve Bank of Atlanta Working Paper #88-9, December 1988.

"The Effect of the 'Triple Witching Hour' on Stock Market Volatility," (with William Goetzmann) *Federal Reserve Bank of Atlanta Economic Review*, September/October 1988.  Reprinted in *Financial Derivatives: New Instruments and Their Uses*. Atlanta: Federal Reserve Bank.

"Stock Market Volatility," *Federal Reserve Bank of Atlanta Economic Review*, November/December 1987.

Book review of *In Who's Interest: International Banking and American Foreign Policy*, by Benjamin J. Cohen, Yale University Press, in *Federal Reserve Bank Of Atlanta Economic Review*, Summer 1987.

**PRESENTATIONS**

"The Computation of Damages in Securities Fraud Cases," at the Grant and Eisenhofer Institutional Investor Conference, December 2002.

"The Role of the Financial Expert in Complex Litigation," at the Financial Management Association Conference, October 2000.

"Entrepreneurial Incentives and Resource Allocation Among Corporate Venturing Initiatives," (with Joel Shulman and U. Srinivasa Rangan), Babson Entrepreneurship Research Conference, May 2000.

"Application of Real Options in Purchasing Strategies," (with Juan Orozco), presented at the International Applied Business Research Conference, March 2000.

"A Future for Real Estate Futures," (with Linda Stoller) at the Fairfield County chapter of the Real Estate Finance Association, November 1999, and at the Greater Boston Real Estate Board, November 2000.

"Atlanta Park Medical Center v. Hamlin Asset Management," (with Natalie Taylor) at the 1999 convention of the North American Case Research Association.

"Using Future Worlds™ in the Financial Planning Process," (with Jeffrey Ellis) at the Institute of Certified Financial Planners Masters Retreat, October 1999.

"Toward a Better Understanding of Real Options: A Weighted Average Discount Rate Approach," at the 1999 Financial Management Association Conference, the 1999 European Financial Management Association Conference, and the 1999 Multinational Finance Society Conference.

"Just-In-Time Mathematics: Integrating the Teaching of Finance Theory and Mathematics," (with Gordon Prichett) at the 1999 Financial Management Association Conference.

"Alternative Dow Investments for the Individual Investor: Diamonds, Synthetics, and the Real Thing," at the 1999 Academy of Financial Services Convention.

"Evidence of Yield Burning in Municipal Refundings" at Financial Management Association Convention, October 1997; Government Finance Officers Association, 1997; and Northeast Regional Convention of the National Association of State Treasurers, 1997.

"Teaching the Strong-Form Efficient Market Hypothesis" at Conference on Classroom Experiments in the Teaching of Economics at University of Virginia, September 1995.

"Efficient Consolidation of Implied Standard Deviations," (with Shaikh Hamid) at Midwest Finance Association, March 1995.

"A Test of Intertemporal Averaging of Implied Volatilities," (with Shaikh Hamid) at Eastern Finance Association, April 1995.

"Taking Advantage of Volatility: Non-linear Forecasting and Options Strategies," (with Hassan Ahmed) at Chicago Board of Trade / Chicago Board Options Exchange Conference on Risk Management, February 1992.

"Immunizing Against Interest Rate Risk Using the Macaulay Duration Statistic: An Assessment," (with Don Smith) at Japan-U.S. Conference on Financial Strategies in the 1990s, Osaka, Japan, August 1991.

"The Hull and White Implied Volatility," at American Finance Association Convention, December 1990.

## REVIEWED ARTICLES AND BOOKS FOR:

Journal of Risk
Financial Review
North American Case Research Association
Financial Management
Journal of Business
Journal of Money, Credit and Banking
Quarterly Review of Economics and Finance
Blackwell
Prentice Hall
Southwestern Publishing

**COURSES TAUGHT**

    Valuation (MBA)
    Investments (MBA and Executive)
    Equity Markets (MBA)
    Fixed Income Analysis (Undergraduate and MBA)
    Babson College Fund (Undergraduate and MBA)
    Options and Futures (Undergraduate)
    Advanced Derivative Securities (MBA)
    Corporate Finance (MBA and Executive)
    Financial Management (MBA)
    Risk Management (MBA)
    Corporate Financial Strategy (MBA)
    Integrated Management (Undergraduate)
    Cross-Functional Management (Integrated curriculum, Undergraduate)
    Continuous-Time Finance (Doctoral)
    Portfolio Theory / Management Information Systems (Executive)
    Quantitative Methods for Investment Management (Undergraduate and MBA)
    Introduction to Derivatives Securities (Executive)
    International Finance (Executive)

**TEACHING AWARDS**

Reid Teaching Award, Washington University, Olin School of Business, 1993-94.

Highest teaching score in the Boston University School of Management, Spring 1995 (4.98 out of 5)

Perfect teaching score in QTM3580 at Babson College, Spring 1998 (1.0 out of 1.0).

**SELECT LIST OF MEDIA CITATIONS**

"Downer: Stock Market Takes Another Dive," by John Chesto, *Boston Herald*, July 23, 2002.

"Banks, Developers, Are Main Beneficiaries," [editorial column] by Steven Feinstein, *Boston Globe*, March 31, 2002, page C4.

"Washington Investing: What Michael Saylor is Really Worth," by Jerry Knight, *Washington Post*, March 6, 2000.

"IBM Retools Pensions," by Stephanie Armour, *USA Today*, May 4, 1999.

"L.A. MTA's Law Firm Says Lissack Strategy Will be a Replay," by Andrea Figler, *Bond Buyer,* September 30, 1998.

"Fed Key Player in Rescue of Floundering Hedge Fund," by Andrew Fraser, Associated Press, September 25, 1998.

"Top Banks Plan Bailout for Fund," by Andrew Fraser, Associated Press, September 24, 1998.

"Clarion Call to the Small Investor," by Jo-Ann Johnston, *Boston Globe*, March 4, 1998.

"L.A. Authority Study Shows Rampant Yield Burning Abuse," by Michael Stanton, *The Bond Buyer*, April 22, 1997.

"Dispute Over Yield Burning Dominates GFOA Session," by Michael Stanton, *The Bond Buyer*, January 29, 1997.

"Men Behaving Badly (Yield Burning)," *Grants Municipal Bond Observer*, January 24, 1997.

"Municipal Bond Dealers Face Scrutiny," by Peter Truell, *The New York Times*, December 17, 1996.

"Iowa Market Takes Stock of Presidential Candidates," by Stanley W. Angrist, *Wall Street Journal*, August 28, 1995.

"Looking for Clues in Options Prices," by Sylvia Nasar, *The New York Times*, July 18, 1991.

"For Fed, A New Set of Tea Leaves," by Sylvia Nasar, *The New York Times*, July 5, 1991.

## MEMBERSHIP IN PROFESSIONAL SOCIETIES

American Finance Association
Financial Management Association
Boston Security Analysts Society (member Education Committee)
Association for Investment Management and Research
North American Case Research Association

## CONSULTING AND EXECUTIVE DEVELOPMENT PROGRAM CLIENTS

Analysis Group
Association for Investment Management and Research
Bankers Trust
Barry-Wehmiller Group, Inc.
Berger and Montague, PC
Berman, DeValerio & Pease LLP
Bingham McCutchen LLP
Boston Security Analysts Society
Boston University Center for Project Management
Boston University Chartered Financial Analyst Review Program
Burke, Weaver and Prell
CareMatrix
Chimicles & Tikellis LLP
Cho Hung Bank of Korea
Chrysler Corporation
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
Devine, Millimet & Branch
Gilman and Pastor, LLP
Grant & Eisenhofer, P.A.
Hale and Dorr LLP
Heins, Mills, & Olson, PLC
Helsinki School of Economics
Hennigan, Mercer, & Bennett
Husch and Eppenberger, LLC
Honeywell
Internal Revenue Service
ITT
James H. Hughes
Jenner & Block, LLC
Kasowitz, Benson, Torres & Friedman LLP
King & Spalding
Lehman Brothers
Leonard, Street & Deinard
Logal Software

Lucent Technologies
The Lyme Timber Company
Milberg Weiss Bershad Hynes & Lerach LLP
Moon, Moss, McGill, Hayes & Shapiro, P.A.
New Jersey Division of Gaming Enforcement
Nippon Life Insurance
Phillips & Cohen
PhyMatrix
Piper Aircraft Corporation Trust
Robinson & Cole LLP
Rosenman & Colin, LLP
Shulman/Princeton Chartered Financial Analyst Review Program
Skadden, Arps, Slate, Meagher & Flom LLP
Sperling, Slater, and Spitz
State of Illinois Office of the Attorney General
State Street Bank
Sugarman, Rogers, Barshak, & Cohen, PC
Sullivan and Worcester, LLP
Testa, Hurwitz & Thibeault, LLP
Travelers Insurance
United States Securities and Exchange Commission (SEC)
Worsham Forsythe Wooldridge LLP